IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                        Case No. 1:23-cr-01475-MLG-1

THOMAS ABEYTA,

    Defendant.

**MEMORANDUM OPINION AND ORDER
<u>DENYING DEFENDANT'S MOTION FOR AN INDIGENCY FINDING</u>**

Defendant Thomas Abeyta pled guilty to two counts of distribution of child pornography and possession of the same. Doc. 39. In accordance with the parties' Rule 11(c)(1)(C) plea agreement, the Court sentenced Abeyta to serve sixty months imprisonment for the distribution conviction, running concurrent with 132 months imprisonment for the possession conviction, followed by five years of supervised release. Doc. 62 at 1. The Court also imposed financial penalties, including a mandatory $5,000 special assessment under the Justice for Victims of Trafficking Act of 2015 ("JVTA"), 18 U.S.C. § 3014. Doc. 62 at 1. Abeyta asserted that he was "indigent" and thus ineligible for the JVTA assessment. Sentencing Hearing, at 1:38:38-1:44:55 (recorded May 8, 2025) (on file with Cimmaron Courtroom) ("Hearing Recording").[1] The Court permitted the parties to brief the issue and withheld entering final judgment. *Id.* at 1:42:10-40. For the following reasons, the Court denies Abeyta's Motion for a Finding of Indigency. Doc. 66.

---

[1] The Hearing Recording is stored on the Court's Liberty system. Parties may obtain the recording through the Court and have it transcribed.

## DISCUSSION

The JVTA requires the Court to "assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under . . . chapter 110 (relating to sexual exploitation and other abuse of children) . . . ." § 3014(a)(3). The question presented is whether Abeyta is indigent and therefore exempt from the assessment. No statute provides a clear framework for the Court to determine indigency, and the Tenth Circuit has not established a bright-line test. *United States v. Bonilla*, 743 F. App'x 210, 216 (10th Cir. 2018) ("[T]he text of 18 U.S.C. § 3014(a) does not provide any guidance regarding how a district court should evaluate indigency."). That said, Abeyta's two main arguments—that he is indigent for purposes of the JVTA because Judge Yarbrough appointed him a Federal Defender, and that his current financial situation plus his future earnings show that he cannot pay the $5,000—fail to persuade.

I.  **Appointment of a Federal Defender and Indigency**

Abeyta suggests that Judge Yarbrough's finding he "was poor enough such that he qualified for representation by the New Mexico Office of the Federal Defender" supports the argument that he is indigent for JVTA purposes. Doc. 66 at 4-5; Hearing Recording at 1:38:38-39:00. That Abeyta was provided a public defender is an analytical plus factor but not dispositive. For example, in *United States v. Bonilla*, the district court imposed a $5,000 JVTA special assessment against Bonilla. 743 F. App'x at 212-13. He "contend[ed] that the imposition" of such was "unlawful because, where he qualified for court-appointed counsel, he must have been indigent as a matter of law." *Id.* at 216. The Tenth Circuit rejected this argument, stating that "a defendant need not be indigent to qualify for appointed counsel. Rather, [they] need only be financially unable to obtain counsel." *Id.* (citation modified). Continuing, the court held, "the fact that Mr. Bonilla received court-appointed counsel does not demonstrate that the district court acted

2

unlawfully when determining that Mr. Bonilla was not indigent for purposes of the additional special assessment." *Id.* Thus, qualifying for a public defender does not ipso facto render Abeyta indigent as a matter of law. *See also United States v. Rosario*, 7 F.4th 65, 71 (2d Cir. 2021) ("Appointment of counsel is not dispositive of indigency for purposes of imposing monetary penalties."); *cf. United States v. Nichols*, 841 F.2d 1485, 1506 (10th Cir. 1988) ("Financial inability is a lesser standard than indigency.").

The Court turns now to whether Abeyta's current financial situation and potential future earnings qualify him as indigent for JVTA purposes.

## II.     Current Financial Situation and Future Earning Capacity

To determine indigency in the § 3014 context, courts consider a "defendant's current financial situation" and their "ability to pay in the future . . . ." *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017); *Rosario*, 7 F.4th at 73. Applied here, the Court notes that Abeyta owns a house and a vehicle valued at approximately $272,000 and $7,400, respectively. Doc. 43 at 19. He receives a monthly pension of $1,5000, which will continue until his death; has earned a small income of $60 per month during his pre-trial incarceration; and has a spouse who earns over $2,000 every month. *Id.* All told, Abeyta presently has a net worth of $72,007 and a total monthly cash flow of $805. *Id.* at 19-20. To assess Abeyta's future earning capacity, the Court weighs his ability to earn money in the future against factors that may limit his ability to pay, such as a poor work history, living with a physical disability, and facing a long sentence. *See, e.g.*, *Rosario*, 7 F.4th at 72 (explaining that defendants who "have no work history, are physically disabled, or are serving sentences so long that they are unlikely ever to obtain post-release employment" may be considered indigent). When Abeyta is released, he will be beyond the traditional retirement age and may be less competitive in the job market. Doc. 66 at 5. Nevertheless, Abeyta's work history

is sufficient, as he was formerly employed by Albuquerque Public Schools as a janitor[2] and is not physically disabled. Doc. 43 at 18. Finally, Abeyta argues that "it is unlikely that [he] will be able to make any meaningful payments towards an assessment . . . since it will take nearly [thirty] years for [him] to pay the restitution already imposed." Doc. 66 at 5 (assuming the Court will order he pay either fifteen percent of his monthly income or $100, whichever is greater). But the Court ordered Abeyta to pay ten percent of his income or $500 per month, whichever is greater,[3] and Abeyta's argument fails to account for his assets.[4] Hearing Recording at 1:34:15-26.

These facts and relevant decisional authority weigh against finding Abeyta indigent. In *United States v. Taylor*, the court found the defendant non-indigent for JVTA purposes, despite him having zero assets, $342 of debt, and no income. 543 F. Supp.3d 1077, 1077-78 (D.N.M. 2021). Similarly, in *United States v. Wandahsega*, the district court found—and the Sixth Circuit affirmed—the defendant non-indigent, reasoning that even though Defendant Wandahsega "has never had a job earning more than $10 per hour, . . . has no assets other than a checking account

---

[2] To be sure, Abeyta lost his employment because of his arrest, but he possesses transferable skills that will potentially allow him to be gainfully employed. Doc. 66 at 5. Additionally, he cannot return to his prior work in a school setting due to the nature of his conviction and subsequent registry as a sex offender. Abeyta cannot, however, use his sex-offender status as a shield against lost employment. *See Rosario*, 7 F.4th at 73 (holding the district court did not err in concluding that the defendant cannot use his sex-offender status as a reason against paying the assessment).

[3] His monthly income is unlikely to fall below $1,500 per month due to his pension, and the Court assumes that—at least while incarcerated—it will not reach or exceed $5,000 monthly. Therefore, Abeyta will likely pay $500 per month toward restitution.

[4] Paying $500 per month, Abeyta will satisfy his restitution in thirteen and a half years. At that time, he will be less than eighty years old. If he were to pay $500 per month toward the special assessment, he would satisfy that obligation in just ten months. That is not considering his assets. If those are taken into account by subtracting Abeyta's net worth of $72,000 from his $81,000 restitution bill and $5,000 special assessment, he owes $14,000. At $500 monthly, he would pay that off in less than two and a half years. Abeyta can reasonably be expected to pay $5,000 within "twenty years [of] entry of judgment or twenty years after release from imprisonment, whichever is later." *Bonilla*, 743 F. App'x at 216-17 (citing 18 U.S.C. §§ 3014(g), 3613(b)).

containing $200, . . . [and] has $30,000 in outstanding medical bills[,]" he should be able to pay the $5,000 over the course of a twenty-year period, even if he never makes more than minimum wage. 924 F.3d 868, 889 (6th Cir. 2019).

Given Abeyta's current financial situation and future earning potential, the Court concludes that he is non-indigent for JVTA purposes.

## CONCLUSION

The Court denies Defendant's Motion for a Finding of Indigency. Doc. 66. Abeyta must pay the $5,000 special assessment in accordance with 18 U.S.C. § 3014(b) and the Court's sentence. The May 8, 2025, judgment is unchanged and will be filed contemporaneously herewith.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA